UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL PIAZZA ET AL.                    CIVIL ACTION

VERSUS                                   NO. 17-10289

ASSOCIATED WHOLESALE GROCERS INC         SECTION: H (4)

**ORDER AND REASONS**

Before the Court are Plaintiff's Motion for Conditional Certification and Judicial Notice (Doc. 52) and Defendant's Motion for Protective Order (Doc. 43). For the following reasons, the motions are DENIED.

**BACKGROUND**

This is a collective action for unpaid wages under the Fair Labor Standards Act ("FSLA"), 29 U.S.C. § 201 *et. seq.* Defendant Associated Wholesale Grocers, Inc. ("AWG") is a national food wholesaler that operates a warehouse complex in Pearl River, Louisiana as part of its distribution network. Plaintiff Michael Piazza worked for Defendant at the Pearl River warehouse as a laborer. Plaintiff alleges the following: His job duties included "unloading product from delivery trucks and placing the products in the

1

warehouse, repackaging product pallets to prepare for shipment, and loading delivery trucks with products."[1] Plaintiff was regularly scheduled to work eight hours per day for a total of 40 hours per week, but routinely began work before his scheduled start time, ended work after his scheduled stop time, and worked through his scheduled breaks. As a result, Plaintiff regularly worked 60 to 70 hours per week, but was prevented by Defendant from recording this additional time and therefore was not compensated for it. Defendant also had a policy of automatically deducting 30 minutes each day for a lunch break, rather than having workers clock in and out, despite the fact that Plaintiff rarely took a break of more than a few minutes.

Defendant submits evidence that work at its Pearl River facility is divided into two shifts: inbound and outbound. During the inbound shift, Defendant's employees receive shipments from various vendors and place them into their proper locations in Defendant's warehouse. During the outbound shift, employees performing the role of selector locate, select, and stack onto pallets goods that customers have ordered. Selectors then move a completed order to the loading dock area where employees performing the role of loader place the pallets into delivery trucks. Forklift operators assist with the selection and loading processes.

Selectors on the outbound shift are eligible for a unique compensation policy. Selectors who achieve a productivity level of 225 cases selected per hour may be guaranteed the compensation of a 40-hour work week even if they work fewer hours. Before each shift a manager posts the number of cases that represent a selector's fair share of the total for the day. If the selector pulls that many cases before the shift is over, the selector may leave work early and still be compensated at the end of the week for a full 40 hours.

---

[1] Doc. 52-1 at 5.

Defendant also submits a copy of its employee handbook and the declaration of an employee working in human resources. The handbook states in relevant part,

> All Non-Exempt employees must swipe their badges when beginning work, when beginning lunch break, when returning from lunch and when leaving work. . . . If an employee forgets to clock in or out, he or she must immediately notify the employee's immediate supervisor or manager so that proper action can be taken to record the proper hours worked. Managers and supervisors are responsible for the accuracy and integrity of the timekeeping process.
>
> . . .
>
> All Non-Exempt employees must take lunch away from their desks. No such employee is allowed to work through his or her lunch period except in rare instances with specific approval from their immediate supervisor or manager. Non-Exempt employees are not permitted to work "off the clock." If any member of management instructs you to work "off the clock" to avoid overtime or for any other purpose, you must report it immediately to the Division Director of Human Resources Department or the Corporate Vice President of Human Resources.
>
> . . .
>
> All overtime work by Non-Exempt employees must be authorized in advance by their immediate supervisor or manager. Further, such employees are not permitted to work additional time (such as coming in early, working through lunch or remaining late) without prior approval of their immediate supervisor or manager. Although working unapproved overtime is grounds for appropriate discipline, all employees will, and must, be paid for all actual hours worked.[2]

Defendant admits that it configured its employee time management system to automatically deduct 30 minutes for lunch. It also submits a declaration from a warehouse supervisor stating that Defendant has a policy requiring any

---

[2] Doc. 61-1 at 5–6.

employee that did not take a lunch break to report that fact to a supervisor and fill out a form.³ The supervisor would then make a correction in the timekeeping system.⁴

On October 7, 2017, Plaintiff filed his Complaint in this Court on behalf of himself and others similarly situated.⁵ As of July 31, 2018, 33 other plaintiffs have filed opt-in forms with the Court. Plaintiff alleges that the opt-in plaintiffs worked similar hours as forklift operators, lead men, and general laborers at the same Pearl River facility.

Plaintiff now moves the Court to conditionally certify a class to proceed as a collective action. Plaintiff seeks certification of a class including, "All individuals employed by AWG at any point from October 7, 2014 to the present, who were compensated on an hourly wage basis, and had 30 minute lunch breaks automatically removed from their recorded work hours."⁶ Plaintiff further moves the Court to order Defendant to produce contact information of potential opt-in plaintiffs, to approve the form of notice, to allow the notice to be sent by multiple means, to set the deadline for filing consent forms at 60 days from the mailing of notice, and to approve the use of a third-party administrator. Defendant opposes the Motion.

Additionally, Defendant moves for a protective order prohibiting certain communications to potential class members. Plaintiffs oppose the motion.

## **LEGAL STANDARD**

The FLSA allows for a plaintiff to bring a claim on his own behalf and on

---

³ Doc. 61-3.
⁴ *See also* Doc. 61-5 (declaration of another supervisor).
⁵ Doc. 1.
⁶ Doc. 52-1 at 7.

4

the behalf of others who are "similarly situated."[7] A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources."[8] Efficient resolution in one proceeding of common issues of law and fact benefits the judicial system.[9] The FLSA does not define what it means for employees to be "similarly situated."

Courts have utilized two methods for determining whether plaintiffs are similarly situated, commonly referred to as the *Lusardi* approach and the *Shushan* approach.[10] The Fifth Circuit has not determined whether either approach is required; however, the Eastern District of Louisiana has consistently applied the approach first articulated in *Lusardi v. Werox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).[11] This approach uses a two-step analysis. First at the "notice stage," the court determines whether notice should be given to potential members of the collective action, "usually based only on the pleadings and any affidavits."[12] Because the court has little evidence at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[13]

Under *Lusardi*, although the standard for certification at the notice stage is lenient, courts generally require "at least substantial allegations that

---

[7] 29 U.S.C § 216.
[8] Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).
[9] *Id.*
[10] Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by* Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 (2003). Under the approach articulated in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990), a court applies the same "similarly situated" inquiry as applied in Rule 23 class certification. Accordingly, a court looks to "numerosity," "commonality," "typicality," and "adequacy of representation" to determine whether a class should be certified.
[11] *See, e.g.*, Smith v. Offshore Specialty Fabricators, Inc. 2009 WL 2046159, at *2 (E.D. La. July 13, 2009); Xavier v. Belfor USA Group, Inc., 585 F. Supp. 2d 873, 876 (E.D. La. 2008); Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 559, 569 (E.D. La. 2008).
[12] *Mooney*, 54 F.3d at 1213–14.
[13] *Id.* at 1214.

the FLSA Collective Class Members were together the victims of a single decision, policy, or plan" that is unlawful.[14] "Courts determining whether plaintiffs have submitted substantial allegations of a single plan have looked to 'whether potential plaintiffs were identified . . . whether affidavits of potential plaintiffs were submitted . . . and whether evidence of a widespread [unlawful] plan was submitted.'"[15] If the court grants conditional certification, the case proceeds as a collective action through discovery.[16]

After discovery, the defendant may move for decertification.[17] At that point, the court makes a factual inquiry, with the benefit of considerably more information, as to whether the employees are similarly situated.[18] *Lusardi* applies a three-factor test to determine whether plaintiffs and potential members of the collective action are similarly situated. Courts consider: "(1) the extent to which the employment settings of employees are similar or disparate, (2) the extent to which any defenses that an employer might have are common or individuated; and (3) general fairness and procedural considerations."[19]

## LAW AND ANALYSIS

Plaintiff has not met his burden to conditionally certify a class because Plaintiff fails to present any evidence that potential class members were the victims of a common, unlawful policy or practice. In support of Plaintiff's contention that a group of potential plaintiffs qualify for conditional class

---

[14] *Smith*, 2009 WL 2046159, at *2 (quoting H&R Block, Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999)).
[15] *Id.*
[16] *Mooney*, 54 F.3d at 1213–14.
[17] *Id.*
[18] *Id.*; *Xavier*, 585 F. Supp. 2d at 878.
[19] *Johnson*, 561 F. Supp. 2d at 573.

6

certification, Plaintiff submits declarations from eleven individuals who state that they worked for AWG at the Pearl River location, regularly worked through their lunch breaks "because the work load was so demanding," and had 30 minutes automatically deducted from their work hours each day even when they did not take a lunch break.[20] A twelfth declaration states that the individual worked through his lunch break two to three times per week, but does not allege that Defendant automatically deducted the lunch period.[21] Plaintiff argues that these individuals are similarly situated to him because of the automatic deduction and the fact that they regularly worked though their lunch break.

However, Plaintiff fails to identify a common policy or practice of Defendant's that is unlawful. An employer's use of an automatic deduction for lunch does not, by itself, violate the FLSA.[22] Plaintiff cites to no authority stating otherwise. Rather, the FLSA may be violated when an employer does not compensate employees for time actually worked or fails to ensure that when employees work through a break their time is properly recorded.[23] The declarations that Plaintiff submits say nothing about why the declarants did not have their time properly recorded. In light of Defendant's evidence of an existing policy for correcting the automatic deduction when employees work through lunch and examples of that policy being used in practice, Plaintiff must present some evidence that the potential class members are similarly

---

[20] *See* Docs 52-2 to 52-13.
[21] *See* Doc. 52-14.
[22] *See* Cason v. Vibra Healthcare, No. 10-10642, 2011 WL 1659381, at *3 (E.D. Mich. May 3, 2011); Frye v. Baptist Mem'l Hosp., No. CIV. 07-2708, 2010 WL 3862591, at *5 (W.D. Tenn. Sept. 27, 2010), *aff'd sub nom.* Frye v. Baptist Mem'l Hosp., Inc., 495 F. App'x 669 (6th Cir. 2012).
[23] *Cf.* Newton v. City of Henderson, 47 F.3d 746, 748–49 (5th Cir. 1995) (holding that employer was not liable for unreported overtime unless the employer knew or should have known that the reported hours were incorrect).

situated with respect to why their time was not corrected.[24] Without such, Plaintiff may have shown that workers share common facts about their employment, but fails to show that the putative class members were together the victims of a single policy or plan that was unlawful.[25] Accordingly, Plaintiff's motion to conditionally certify a class is denied. The Court need not consider Plaintiff's remaining requests.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Conditional Certification is DENIED. Defendant's Motion for Protective Order is DENIED WITHOUT PREJUDICE, and may be re-urged as appropriate in light of this order.

New Orleans, Louisiana this 3rd day of August, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[24] *See* Saleen v. Waste Mgmt., Inc., No. CIV 08-4959, 2009 WL 1664451, at *4 (D. Minn. June 15, 2009), *aff'd*, 649 F. Supp. 2d 937 (D. Minn. 2009).
[25] *See Mooney*, 54 F.3d at 1214 n.8.