UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL PIAZZA ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-10289** |
| **ASSOCIATED WHOLESALE GROCERS INC.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 82). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

In this lawsuit under the Fair Labor Standards Act ("FLSA"), Plaintiff Michael Piazza seeks unpaid overtime that he allegedly earned while working as a loader at Defendant Associated Wholesale Grocers, Inc.'s ("AWG") distribution warehouse in Pearl River, Louisiana. On February 26, 2019, Defendant moved for summary judgment arguing that it qualified as a "motor private carrier" under federal law such that it was not required to pay Plaintiff overtime under the FLSA. Plaintiff opposes the Motion.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."[1] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[2] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[7] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued

---

[1] FED. R. CIV. P. 56.
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] *Id.* at 248.
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[7] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

The FLSA entitles qualifying employees to one and half times their regular hourly wages for overtime hours worked in excess of 40 hours per week.[10] The overtime entitlement, however, does not apply to "'any employee with respect to whom the [Department of Labor's] Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.'"[11] Section 31502, originally enacted as part of the Motor Carrier Act ("MCA"), authorizes the Department of Transportation to establish such qualifications for employees of (1) "motor carrier[s]" and (2) "motor private carrier[s], when needed to promote safety of operation."[12] Thus, the overtime exemption only applies if an employer is either a motor carrier or a motor private carrier.[13] 49 U.S.C. § 13102 defines "motor carrier" and "motor private carrier" as follows:

> "[M]otor carrier" means a person providing motor vehicle transportation for compensation.
>
> "[M]otor private carrier" means a person, other than a motor carrier, transporting property by motor vehicle when—
>
> > (A) the transportation is as provided in section 13501 of this title;
> >
> > (B) the person is the owner, lessee, or bailee of the property being transported; and

---

[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] 29 U.S.C. § 207(a).
[11] Amaya v. NOYPI Movers, L.L.C., 741 F. App'x 203, 205 (5th Cir. 2018) (quoting 29 U.S.C. § 213(b)(1)).
[12] 49 U.S.C. § 31502(b).
[13] *Id. See* 29 C.F.R. § 782.2(a).

3

(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.[14]

AWG argues that it qualifies as a motor private carrier under the facts of this case. Plaintiff disagrees. The following facts are undisputed: AWG is a cooperative grocery wholesaler that services independently owned supermarkets throughout the United States. Plaintiff worked as a loader at AWG's distribution warehouse in Pearl River, Louisiana. Loaders place pallets of goods into 18-wheelers that then deliver the goods to supermarkets. At some of its distribution warehouses, AWG owns and operates the 18-wheelers loaded by loaders. At AWG's Pearl River facility, however, such 18-wheelers are owned and operated by a company called Cardinal Logistics Management Corporation ("Cardinal"). Plaintiff and loaders like him are employed by AWG, not Cardinal.

Determining whether AWG is a "motor private carrier" under these facts raises an issue of first impression in this Circuit: what does it mean to be "transporting property by motor vehicle" as provided in 49 U.S.C. § 13102? Does a company transport property by motor vehicle even if it hires a contractor to do the transporting? Answering this question in the negative, this Court will now explain why AWG does not qualify as a motor private carrier under the facts of this case.

1. **Cardinal, not AWG, does the relevant "transporting" at AWG's Pearl River facility**

In *Carter v. Tuttnaeur*, the Eastern District of New York considered whether a manufacturer of cleaning products qualified as a motor private

---

[14] 49 U.S.C. § 13102(14)-(15). Section 13501 provides the types of transportation that trigger the Department's jurisdiction. 49 U.S.C. § 13501. This element is satisfied if "property . . . [is] transported by motor carrier . . . between a place in a State and a place in another State." *Id.*

carrier under the MCA exemption with respect to a loader who worked for the company.[15] In *Carter*, the trucks that the manufacturer used to ship its products to customers—the same trucks that the loader filled with company products—were owned and operated by third-party carriers such as FedEx and UPS.[16] Homing in on this fact, the court in *Carter* held that the cleaning product company was not a motor private carrier because third parties, not the cleaning product company, did the relevant transporting.[17] To hold otherwise, the Court reasoned, "would bring nearly all manufacturers or suppliers within the definition" of a motor private carrier.[18]

This Court finds the reasoning in *Carter* persuasive. The parties do not dispute that Cardinal qualifies as a motor carrier under the facts of this case. Accordingly, the Department of Transportation has jurisdiction over Cardinal's employees to further its statutory goal of ensuring safety on the country's highways.[19] To expand that jurisdiction to AWG in a case like this one would vest the Department with authority that Congress did not grant it. Accordingly, because AWG neither owns nor operates the trucks that transport the goods that Plaintiff loaded at AWG's Pearl River facility, it did not transport property by motor vehicle to qualify as a motor private carrier under 49 U.S.C. § 13102(15).

---

[15] 78 F. Supp. 3d 564, 566 (E.D.N.Y. 2015).
[16] *Id.*
[17] *Id.* at 568.
[18] *Id.*
[19] Carley v. Crest Pumping Techs., L.L.C., 890 F.3d 575, 579 (5th Cir. 2018) ("The Supreme Court has reasoned that the purpose of the MCA exemption was primarily to ensure that operators of vehicles affecting highway safety were regulated by an entity with a greater understanding of the particular safety concerns.") (citing Morris v. McComb, 332 U.S. 422, 436 (1947)).

## 2. AWG cannot rely on self-provided trucking services at other facilities to meet the transportation requirement for Plaintiff

The parties do not dispute that AWG qualifies as a motor private carrier for the employees who load and drive trucks owned and operated by AWG at facilities other than AWG's Pearl River facility. AWG argues that because it qualifies as motor private carrier for those employees, it should qualify as one for all employees—even those like Plaintiff.

Under 29 C.F.R. § 782.5(a), "a 'loader' as defined for Motor Carrier Act jurisdiction . . . is an employee of a carrier subject to section 204 of the Motor Carrier Act . . . whose duties include, among other things, the proper loading of his employer's motor vehicles . . . ." This regulation clearly provides that a loader must load vehicles that belong to his employer to fit within the MCA's exemption. It is undisputed that Plaintiff's employer was AWG, not Cardinal, and that Plaintiff loaded Cardinal's trucks, not AWG's. Thus, Plaintiff would not fall within the exemption even if AWG were a motor private carrier.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED**.

New Orleans, Louisiana this 25th day of April, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

6