# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL PIAZZA, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-10289** |
| | **c/w 18-211** |
| **ASSOCIATED WHOLESALE GROCERS, INC.** | **SECTION "H"(4)** |

### ORDER AND REASONS

Before the Court is a **Motion for Sanctions (Rec. Doc. 101)**[1] filed by the Defendant seeking sanctions against the Plaintiff in the form of attorneys' fees and cost, dismissal of Plaintiff's Americans with Disabilities Act ("ADA") claims, or in the alternative, for an adverse jury instruction addressing Plaintiff's abuse of the discovery process and perjury. The motion is opposed. Rec. Doc. 52. The motion was heard with oral argument and supplemental briefs were required.

**I.  Background**

Plaintiff, Michael Piazza, a former employee of Defendant, Associated Wholesale Grocers, Inc. ("AWG"), filed this action contending that his employer violated the Family and Medical Leave Act ("FMLA") and the ADA when they refused to allow him time off for his lung condition. R. Doc. 1. According to Piazza, AWG allegedly threatened him with termination if he took time off. *Id.*

In this motion, AWG contends that Piazza claims he was unable to work due to his medical condition and sought the assistance of a pulmonologist, Dr. Mark T. Knower. Piazza was absent

---

[1] Motion filed as R.Doc. 35 in member case number 18-211.

from work from August 15, 2016 to October 3, 2016 as a result of his lung condition. R. Doc. 35-1, p. 2. According to AWG, Piazza contends that after his hospitalization due to pneumonia in August 2016, he was placed on light duty work by Dr. Knower. However, his treating physician, Dr. Knower, testified during his deposition that he released Piazza without restrictions to return to work and had not seen the plaintiff since the August 29, 2016. The only evidence thus far presented regarding whether Piazza was placed on light duty is Piazza's own deposition testimony when he claims that either Dr. Knower or Dr. Janine Parker placed him on a light duty limitation.

Despite the fact that neither doctor recalls placing him on light duty, when Piazza tried to return to work on October 3, 2016, he presented a note to AWG indicating that he could return to light duty. AWG, however, rejected the note and refused to allow him to return to work requiring that he provide a letter from the treating physician. In this motion, AWG contends that despite this, the note produced by Piazza that day was forged and his testimony that he was placed on light duty constitutes perjury.

AWG contends that it was severely prejudiced by expending time and resources to investigate and establish the Plaintiff's perjurious behavior. It therefore filed the subject motion, based on Piazza's alleged perjury, seeking the ultimate sanction of dismissal, reimbursement of its attorney's fees and costs incurred in the motion, or alternatively an adverse jury instruction. *Id*. at p. 1.

Piazza opposes the motion contending that: (1) he produced all requested information in response to the discovery requests; (2) the note is not relevant to prove credibility, because the Plaintiff made use of the note and took no steps to conceal it; and (3) AWG cannot show that this evidence would have led him to being fired, because the Defendant admitted that it never had this

2

record in its possession. *Id*. Trial in this matter and the consolidated cases is set to begin on July 12, 2019 before the District Judge.

II. **Standard of Review**

It is axiomatic that this court has the inherent power to impose sanctions, up to and including dismissal,

> upon proof that a fraud has been perpetrated upon the court. . . . [This power] is necessary to the integrity of the courts, for tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public. . . .

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quotations and citations omitted).

However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id*., at 44-45. The Supreme Court has further decreed that "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. . . . [O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." *Id*. The Court further recognized that "the less severe sanction" of the assessment of attorney's fees also would certainly be within a court's inherent power. *Id*.

III. **Analysis**

AWG contends that Piazza's ADA claims ought to be dismissed because the October 3, 2016 light duty slip he produced in discovery constitutes fraud and his related testimony was perjury. AWG contends that the duty slip does not contain the signature of Dr. Knower or his medical assistant. AWG alleges that, although it did not accept or rely on the document in terminating Piazza, he did not have the disability as the form alluded to because he was fit for duty as early as August 2016, according to Dr. Knower's records. AWG also contends that Piazza testified falsely when he stated that AWG denied him the ability to return to work on light duty and allegedly begged to get the October 3, 2016 work slip.

Piazza however contends that his case should not be dismissed because the document cannot be verified as to its authenticity or correctness. Piazza further contends that the October 3, 2016 duty slip he submitted is not proper evidence, because AWG's personnel-file custodian did not have the document, nor did AWG rely upon it in reaching their decision to deny him light duty. Piazza asserts that the document is not relevant to his claims because it was not used by AWG in its decision to terminate him. Instead, the form was returned to him when he was not allowed to return to work.

In *Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011), the United States Fifth Circuit Court of Appeals affirmed the dismissal of an employment discrimination lawsuit by a judge of this court, who found that plaintiff had perjured himself by giving testimony in his deposition which directly conflicted with his deposition testimony given four months earlier in a personal injury case that he also filed in a state court. Both courts recognized that the plaintiff in *Brown* had given sworn, perjurious deposition testimony determined which formed the basis of the dismissal sanction.

The Fifth Circuit recalled the factors used to determine the adequacy of a dismissal sanction:

> [W]e ordinarily will affirm a dismissal with prejudice only if: (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the best interests of justice. The district court's consideration of lesser sanctions should appear in the record for review of the court's exercise of its discretion. Additionally, we consider dismissal with prejudice to be a more appropriate sanction when the objectionable conduct is that of the client, and not the attorney.

*Brown*, 664 F.3d at 77 (quoations and citations omitted).

The Fifth Circuit also held that plaintiff Brown's perjury was the type of "contumacious conduct" to justify the dismissal of his complaint. The Court found that Brown's defiance of the oaths he took before the two depositions was perjury and contrary to the administration of justice.

> Brown deceitfully provided conflicting testimony in order to further his own pecuniary interests in the two lawsuits and, in doing so, undermined the integrity of the judicial process. Through his perjured testimony, Brown committed fraud upon the court, and this blatant misconduct constitutes contumacious conduct.

*Id*. at 77-78 (quotations and citations omitted).

Addressing the question of the severity of the sanction of dismissal, the Fifth Circuit revisited the circuit precedent which required the district court to use "the least onerous sanction which will address the offensive conduct." *Id*. at 78. The sanction cannot be vindictive or an overly harsh reaction to objectionable conduct. *Id*. Instead, the amount and type of sanction only must be that "necessary to carry out the purpose of the sanctioning provision." *Id*. The Court further decreed that "a district court's dismissal of an action with prejudice is appropriate only if its deterrent value cannot be substantially achieved by use of less drastic sanctions." *Id*. (quotations and citations omitted).

The Fifth Circuit affirmed the district court's reasoning that lesser sanctions than dismissal, such as monetary sanctions or reimbursement of attorney's fees, "would not be appropriate to remedy Brown's misconduct" in light of his pauper status (i.e. inability to pay monetary amounts) and the desecration his perjury had towards his constructive discharge and racial harassment claims. *Id*. As concluded by the district court, this left dismissal of the entire complaint with prejudice as the only appropriate sanction under both the deterrent and institutional rationales commensurate with Brown's serious misconduct. *Id*. at 78-79 (footnote omitted) (citing *Hull v. Municipality of San Juan*, 356 F.3d 98, 103 (1st Cir. 2004); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001); *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 750 (5th Cir. 1987); *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1160 (5th Cir. 1985)).

The concerns addressed by the *Brown* court are not present at this time in the instant case. The deposition testimony of Dr. Knower establishes that: (1) Piazza's last appointment with him

was in August 2016, and the contested form is dated in October 2016; (2) Dr. Knower's medical assistant, Stacey Taylor, would pre-sign forms that he later would fill in; and (3) Dr. Knower did not know if the relevant form was completed before Taylor sought employment elsewhere. According to his testimony, Dr. Knower never put Piazza on light duty, but Piazza was on FMLA from December 25, 2015 through February 25, 2016. Depo. Dr. Knower, p. 29, ll. 1-7, 2/27/19. Piazza had been cleared to return to work in the past and requested another work-release note which Dr. Knower provided. *Id.* at 33. Piazza was seen by Dr. Knower on March 2, 2016 and could have returned to work at that time and did not. *Id.* According to Dr. Knower, there were no lifting restrictions preventing Piazzo from working. *Id.*

Piazza returned to Dr. Knower for a follow up visit in August 2016 after he was hospitalized for acute pneumonia and started on Itraconazole[2] to address his mild asthma *Id.* at 36. Dr. Knower indicated that after the August 2016 visit, Piazzo could have returned to work. *Id.* at 39. Dr. Knower did not recall speaking with Piazza after the August 29, 2016 visit. *Id.* at 43. He noted that there was a September 29, 2016 appointment but Piazza failed to show. *Id.*

In contrast, Piazza testified in his deposition that it was Dr. Knower who returned him to work without restriction on October 3, 2016. Depo. Piazza, p. 96, 1/25/15. He testified that he actually returned to work and clocked in on that date but was refused permission to work because he "could not work on light duty." *Id.* at 94. The medical assistant, according to Piazza, did not understand why AWG would not allow him to return to work. *Id.* He testified that he returned home and rested for a week and then went back to the doctor's office to get a back-to-work slip for which he had to practically beg. *Id.* Piazza testified that he believed that there should have

---

[2]This medication is used to treat a variety of fungal infections and belongs to a class of drugs known as azole antifungals. https://www.webmd.com/.

been another slip when Dr. Knower placed him on light duty before releasing him to return to work on October 3, 2016. *Id*.

The former medical assistant, Stacey Taylor, was not deposed but submitted a declaration prepared by AWG's attorney challenging the inscriptions on the October 3, 2016 work-slip presented by Piazza. The affidavit declares that the "10/3/16" date and the words "none" and "work limitations" on the form were not in her handwriting. She attested, however, that the form bore her signature and was identical to that on the March 14, 2016 form. Neither Dr. Knower nor Taylor testified or made any attestations about the physical limitations form dated October 7, 2016.

Unlike the facts in *Brown*, *supra*., this Court is not presented with evidence or proof of false statements by Piazza, under oath or otherwise. Although Piazza submitted verified responses to AWG's Interrogatories, there is no question included in the Interrogatories where he falsely attested to being on a work restriction beyond March 2016. The evidence presented with this motion also shows that a return to work form dated January 18, 2016 and January 27, 2016 indicated that Piazza was not healed enough to return to work. Exhibits 1 & 2. However, starting on March 4, 2016, there was no longer any record mention that Piazza could not return to work through October 3, 2016. There is a physical ability assessment form bearing Dr. Knower's name and indicating that, as of October 7, 2016, Piazza had lifting and carrying restrictions (consistent with the testimony) because of Piazza's physical limitation but that there were no pulmonary limitations. Exhibit C. Notably, this form is not the form at the center of this dispute.

While Piazza indicates that he returned to Dr. Knower to beg for a release-to-work form, the doctor clearly does not recall seeing him on October 3, 2016 and the records do not reflect that the doctor visited with Piazza. However, the Court must point out that the doctor also did not

recall seeing Piazza on January 27, 2016 or February 25, 2016, but instead, authorized the completion of the forms under Ms. Taylor's signature.

While AWG strongly suggests that Piazza with animus has lied about his work restrictions, the evidence submitted by AWG does not clearly establish that he lied or committed perjury like the plaintiff in *Brown*. This record without doubt reflects that there are questions of credibility and recollection between the plaintiff and the medical personnel. However, there is no clear perjury before the Court when the medical records include a form indicating a lifting restriction that was dated October 7, 2016 (which is not the contested form). Further it is not lost on the Court that although neither side's counsel made mention of the form, it was submitted as an exhibit to AWG's motion. *See* Exhibit C.

Whether the lifting restriction impacts Piazza's lung condition (or vice versa) is not known to the Court, but it should be noted that the earlier medical forms that contained a notation of Piazza's inability to return to work did not clearly indicate the reason for the inability other than that he was not well enough. Additionally, even if somehow the evidence were clearer, and Piazza's deposition testimony was clearly false, AWG did not rely upon the form from Dr. Knower's office to refuse to permit Piazza's return to work. Thus, the form itself has not been shown material to whether AWG failed to accommodate him in violation of the ADA.

For the foregoing reasons, the Court does not find that dismissal of Piazza's claims is warranted as a sanction at this time based solely on AWG's belief that Piazza may have falsified documents or lied in this case. At this time, there is not enough established or definitive information before the Court to warrant any sanction, even one less than dismissal. Can it later be proven by AWG that there has been contumacious misconduct or perjury, as opposed to conflicting

memories and poor recollection, the Court will entertain AWG's concerns and revisit the possibility of sanctions.

Accordingly,

**IT IS ORDERED** that defendant AWG's **Motion for Sanctions (Rec. Doc 101)** is hereby **DENIED**.

New Orleans, Louisiana, this  13th   day of May, 2019.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**